# GEORGOULIS & ASSOCIATES PLLC

COUNSELORS AT LAW
45 BROADWAY, 14TH FLOOR
NEW YORK, NEW YORK 10006

CHRIS GEORGOULIS
_____

TEL:   (212) 425-7854
FAX:   (212) 422-5360
www.georgoulis.com

GEORGE SITARAS *
DANIEL BORRIELLO
JOYCE J. SUN
GRAEME SPICER
MICHAEL McDERMOTT
_____

* ALSO ADMITTED IN NEW JERSEY
**OF COUNSEL

GEORGE MARCO **

VIA FIRST CLASS MAIL                                June 6, 2008

Honorable Charles S. Haight
United States District Court
Southern District of New York
500 Pearl Street, Room 1940
New York, New York 10007

RE:    *On Par Contracting Corp. v. The District Council of New York City and*
       *Vicinity of the United Brotherhood of Carpenters*
       08 CV 3329 (LAP)

Dear Judge Haight:

At an Initial Conference on the above referenced matter before the Honorable Loretta A. Preska, Judge Preska requested that counsel send this joint letter to you regarding this litigation to seek your guidance on whether this action should be transferred to your docket. Copies of the pleadings in this litigation are attached hereto for your convenience.

Generally, many of the issues involved in this litigation pertain specifically to the Consent Decree, and subsequent contempt proceedings regarding same, which are currently before you in the matter of the *United States of America v. District Council of New York and Vicinity of the United Brotherhood of Carpenters*, 90 Civ. 5722 (CSH). Based upon your familiarity with these issues, we respectfully request that you consider

the transfer of this litigation to your docket. Thank you for your consideration in this matter.

Sincerely,

Daniel Borriello (DJB 1526)
Georgoulis & Associates, PLLC
Attorneys for the Plaintiff
ON PAR CONTRACTING CORP.
45 Broadway, 14th Floor
New York, NY 10006
Tel:    (212) 425-7854
Fax:    (212) 422-5360

Gary Rothman (GR 2785)
O'Dwyer and Bernstien, LLP
Attorneys for the Defendant
THE NEW YORK CITY DISTRICT
COUNCIL
52 Duane Street
New York, NY 10007
Tel:    (212) 571-7100
Fax:    (212) 571-7124

cc:

Honorable Loretta A. Preska  (*via ECF and First Class Mail*)
United States District Court
Southern District of New York
500 Pearl Street, Room 1320
New York, New York 10007





UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

ON PAR CONTRACTING CORP,

                         Plaintiff,

        - against -                                    **COMPLAINT**

THE DISTRICT COUNCIL OF NEW YORK CITY
AND VICINITY OF THE UNITED BROTHERHOOD
OF CARPENTERS AND JOINERS OF AMERICA and
JOHN DOES 1-50, unknown businesses entities that were
signatories to the July 1, 2001 CBA.

                         Defendants.

---------------------------------------------------------------------x


        The Plaintiff, ON PAR CONTRATCING CORP. ("On Par"), by its attorneys,

GEORGOULIS & ASSOCIATES, PLLC, for its complaint herein, alleges as follows:


## PRELIMINARY STATEMENT


        1.      This action concerns the Defendants THE DISTRICT COUNCIL OF

NEW YORK CITY AND VICINITY OF THE UNITED BROTHERHOOD OF

CARPENTERS AND JOINERS OF AMERICA (the "District Council"). For over

twenty five years, the District Council has allowed its officers to utilize a corrupt scheme

whereby preferential treatment was given to certain companies in exchange for secret

payoffs. This corrupt scheme fraudulently induced On Par Contracting Corp. to become a

member of a July 1, 2001 Collective Bargaining Agreement with the District Council,

and further damaged On Par Contracting Corp. by preventing it from receiving the fair and just services that it was entitled to as governed by the District Council's own constitution and By Laws, resulting in damages in excess of $100,000,000.00. In addition, the District Council knowingly permitted its officers to participate in a conspiracy with JOHN DOES 1-50 to manipulate and corrupt the job referral system for the District Council's members thereby creating an unfair and illegal restriction on business opportunities available to On Par. These actions constituted a violation of Section 1 of the *Sherman Anti-Trust Act*, the *Labor Relations Act of 1947* ("LMRA"), the *New York State Donnelly Act*, *N.Y. Gen. Bus. Law § 340*, and various provisions of the July 1, 2001 CBA resulting in damages to On Par in excess of $100,000,000.00.

2.      The Defendants' unlawful actions have been the subject of ongoing litigation instituted by the United States Department of Justice in the Southern District of New York. *See, e.g., United States v. District Council of N.Y.C., et al*, 778 F. Supp.2d 738 (S.D.N.Y. 1991). *See also United States v. District Council of N.Y.C., et al*, 2003 WL 21035292 (S.D.N.Y. 2003). In fact, the specific allegations in this Complaint have been the subject of federal objections to the 2001 Collective Bargaining Agreement and its implementation and operation by the Defendants. See, e.g., *United States v. District Council of N.Y.C., et al.*, Fed. Appx. 14 (2d Cir. 2007); *United States v. District Council of N.Y.C., et al.*, 2007 WL 3256841 (S.D.N.Y. Oct. 26, 2007); and *United States v. District Council of N.Y.C., et al.*, F.Supp.2d 439 (S.D.N.Y. 2006).

2

## JURISDICTION AND VENUE

3.    Jurisdiction and venue in this action is predicated upon the *Sherman Anti-Trust Act*, 15 U.S.C. § 1, *the Labor Management Relations Act of 1947* ("LMRA"), 29 U.S. C. § 185, and 28 U.S.C. § 1331, 1367 and 1391.

## PARTIES

4.    The Plaintiff, ON PAR CONTRACTING CORP., is a corporation organized and existing under the laws of New York State with a principal place of business in Mount Vernon, NY.

5.    The Defendant, District Council, is located at 395 Hudson Street, New York New York.  It is a labor organization representing employees engaged in commerce and in an industry and activity that affects commerce within the meaning of Sherman Anti-Trust Act and the LMRA. The District Council consists primarily of, and oversees the operations of, more than 20 constituent Local Unions throughout the New York City area. The members of these local unions work in a wide variety of trades within the carpentry industry, including, but not limited to, drywall installation. The District Council negotiates and enters into collective bargaining agreements affecting the terms of employment for its member carpenters within the New York City area.

6.    JOHN DOES 1-50 are legal entities that are believed to be corporations, partnerships, sole proprietorships, and other similar business organizations conducting

3

substantial business within New York City. The exact identities of JOHN DOES 1-50 are currently not know, but it is known that each of the JOHN DOES was a signatory to the July 1, 2001 Collective Bargaining Agreement between the District Council and the Association of Wall-Ceiling & Carpentry Industries of New York, Inc (the "July 1, 2001 CBA"). Upon information and belief, JOHN DOES 1-50 participated in a conspiracy with the District Council to manipulate the job referral system for the District Council members. JOHN DOES 1-50 are businesses that engage in commerce and are part of an industry that affects commerce within the meaning of the Sherman Anti-Trust Act and the LMRA.

## DEMAND FOR TRIAL BY JURY

7.    The Plaintiff On Par hereby demands a trial by Jury.

## STATEMENT OF CLAIMS

8.    The District Council is the central governing body of the carpenters union in the New York City area, and has supervisory powers on all matters relating to its Local Unions. The District Council enters into collective bargaining agreements with employers that govern the terms of employment for all union carpenters in the New York City area. Based directly on the terms of the collective bargaining agreements that the District council enters into, monies are paid by employers into the District Council Funds for the benefit of the members of the District Council.

4

9.    For decades, the officers of the District Council have used their power over the terms of employment for all union carpenters in the New York City area to effectuate a fraudulent and corrupt scheme, whereby specific employers received preferential treatment in return for giving the District Council's officers monetary compensation. Specifically, in return for bribes, certain employers were able to choose which members of the Local Unions would work on their projects; thereby, leaving other employers with under-qualified members to fill their project requirements. In addition, individual members were given preferential treatment by the District Council in exchange for bribes, whereby certain members were given a specific trade classification that afforded them priority on a job referral.

10.    A major reason for the success of this corrupt scheme throughout the District Council and its Local Unions was the job referral systems incorporated into their collective bargaining agreements prior to 1994. In every collective bargaining agreement prior to 1994 that the District Council and its Local Unions were a party to, the District Council negotiated a job referral system referred to as the "50/50 Rule." Under the "50/50 Rule," an employer was permitted to select 50% of the work force on a project without restriction as long as the selections were members of the District Council, and the remaining 50% of the work force was to be chosen without restriction by the District Council and its Local Unions. With the power to regulate 50% of the workforce on any job, the District Council through its officers and the officers of its Local Unions unlawfully manipulated the job assignments of its members to receive unlawful payments from employers and members seeking to get preferential treatment.

11.    In or around 1990, the United States of America commenced an action in the Southern District of New York, *United States of America v. District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America*, 90 Civ. 5722 (CSH) (the "Government Action"). The purpose of this action was to stop the corrupt practices of the District Council and to ensure a just and fair referral system for the members of the Local Unions under the control of the District Council.

12.    On March 4, 1994, the United States of America and the District Council entered into a consent decree for the purpose of settling the Government Action (the "Consent Decree").

13.    As part of the Consent Decree, the District Council admitted and acknowledged that former officers and representatives of the District Council, and certain constituents of its Local Unions had been convicted of labor racketeering. The District Council also acknowledged that the purpose of the Consent Decree was to ensure that the future operations of the District Council and its Local Unions be run democratically, and without unlawful influence from outside their membership.

14.    In a direct attempt to limit the power of the officers of the District Council and its Local Unions with regard to job referrals of its members, the Consent Decree contained a specific job referral procedure to be implemented for all referrals by the District Council and its Local Unions to jobs within their jurisdictions. Specifically, the Consent Decree required that the District Council and its Local Unions compile an "out-of-work" list consisting of all members who have registered their availability for referral. Under the Consent Decree, a member of a Local Union could be referred to a job only if he/she had previously registered their availability for a job referral and were placed on

6

the "out of work list." As part of the Consent Decree detailed records were required to be kept to ensure compliance with the procedures.

15.    Specifically, pursuant to paragraph 5(A) of the Job Referral Rules contained within the Consent Decree, any job referrals to a member made by the Local Unions were to be conducted in the order in which the members registered on the "out of work list," with the first member to have registered for job referral on the "out of work list" referred first. Included in the Consent Decree under Paragraph 5(B) of the Job Referral rules was a limited exception to the first in line, first assigned job referral system, in which an employer was permitted to hire workers that had worked for the employer within the previous 6 months and designate those workers under a "50/50 Rule" as Union selections.

16.    As part of paragraph 11 of the Consent Decree, the By-Laws of the District Council were amended to conform to all the terms of the Consent Decree; thereby, incorporating into the District Council and its Local Unions' By Laws the job referral procedures outlined and defined in the Consent Decree. As part of the Consent Decree, the provisions within the Consent Decree superseded and voided any pre-existing provisions within the By Laws or agreements executed by the District Council that contradicted the provisions within the Consent Decree.

17.    Nevertheless, following the execution of the Consent Decree, the District Council through its officers continued a fraudulent practice of undermining and ignoring the job referral procedures contained within the Consent Decree. Through the actions of the District Council officers and its Local Union officers, a systematic, institutionalized, and cultural opposition to the job referral procedures in the Consent Decree was

7

developed throughout their constituency, which allowed the continuance of a corrupt and fraudulent practice for the assignment of members to specific projects and employers.

18.    Specifically, officers of the District Council, on more than one occasion, knowingly altered the manning request form of an employer to include additional skills that were not originally requested by the employer. To ensure that a specific member of the District Council would receive the referral, the officer then informed the member to add these specific additional skills to the member's list of skills. In addition, certain skills were removed from a member's profile so as to render said member unavailable for other ordinary carpentry jobs. In return for this preferential treatment, the members who were referred held fundraisers for the officers.

19.    The District Council also utilized other measures to corrupt and manipulate the "out of work lists" ("OWL") and the 50/50 Rule. In particular, business agents and JOHN DOES 1-50 would alert selected carpenters and shop stewards that certain jobs were imminent, at which point those carpenters and shop stewards would place their names on the OWL to be available for selection to said jobs. On other occasions, those same carpenters and shop stewards would remove their names from the OWL so as not to be available for ordinary work ensuring their availability for select jobs upon notice from business agents and the JOHN DOES 1-50. In addition, at times, carpenters were instructed by business agents and JOHN DOES 1-50 to refuse certain jobs referred via the OWL and/or make themselves unavailable (i.e. by changing their contact phone number, or not answering their contact phone) in a direct attempt to restrict the ability of competing signatories to the July 1, 2001 CBA, such as On Par, from receiving a fair and equal opportunity to skilled and qualified labor on their projects.

8

20.     New York City is the most unionized city in the country, and the District Council has used this considerable strength when negotiating collective bargaining agreements, including the July 1, 2001 Collective Bargaining Agreement ("July 1, 2001 CBA") with the Association of Wall-Ceiling & Carpentry Industries of New York, Inc, to which CBA On Par was a signatory.

21.     Nevertheless, throughout the negotiations of the July 1, 2001 CBA, the District Council willfully and knowingly concealed the terms of the Consent Decree from the Association of Wall Ceiling & Carpentry Industries of New York, Inc. At no juncture did the District Council ever disclose the mandatory job referral procedures contained within the Consent Decree. Instead, the District Council fraudulently concealed the job referral requirements contained within the Consent Decree and willfully misrepresented that the District Council had the authority to agree to the job referral system outlined within the July 1, 2001 CBA.

22.     In entering the July 1, 2001 CBA, the District Council knowingly sought to undermine the safeguards regarding job referrals contained within the Consent Decree. In blatant disregard to the job referral procedures contained within the Consent Decree, the District Council negotiated a "50/50 Rule" that allowed an employer to select all the carpenters on a project by permitting the employer to pick the 50% of the workforce attributable to the Union's selections without regard to the out of work list or whether the member had previously worked for the employer within the last 6 months.

23.     By knowingly circumventing the job referral procedures contained within the Consent Decree, the District Council sought to continue a corrupt scheme within its job referral system, whereby the District Council and JOHN DOES 1-50 could continue

9

their unlawful practices of manipulating and corrupting the job referral system for members of the District Council. By willfully removing the safeguards of the job referral procedures contained within the Consent Decree from the July 1, 2001 CBA, the District Council misrepresented the purpose and objectives of the July 1, 2001 CBA that were to provide all members of both the District Council and the Association of Wall-Ceiling & Carpentry Industries of New York, Inc with an opportunity to conduct business in a fair and equitable manner by preventing waste and delays, ensuring at all times sufficient forces of skilled workmen, creating stable work conditions in the industry, and keeping the costs of work within the industry as low as possible.

24.    As a direct result of the District Council's actions and misrepresentations, the District Council and JOHN DOES 1-50 were permitted to continue their corrupt scheme of manipulating the job referral system to ensure an unfair and illegal competitive advantage for JOHN DOES 1-50. By utilizing the July 1, 2001, JOHN DOES 1-50 were able to ensure their projects would be staffed with the most qualified and skilled members of the District Council and its Local Unions by obtaining priority and preferential treatment through the manipulation of the OWL. These unlawful actions provided JOHN DOES 1-50 with an unfair advantage over its competitors within the industry, including On Par, who were left to select members from the OWL that lacked the necessary qualifications and skills to ensure a project was performed correctly and in a timely fashion.

25.    As a signatory to the July 1, 2001 CBA, On Par, was completely dependent upon the District Council and its Local Unions to provide qualified and skilled carpenters for its employment needs. Based on the representations contained within the

July 1, 2001 CBA, On Par believed that the District Council and its Local Unions would follow the standards for job referrals contained within their By Laws as part of the Consent Decree, in addition to establishing and maintaining open employment lists thereby ensuring an equitable and fair means for employers to receive qualified and competent workers.

26.     Nonetheless, by altering the job referral system to contradict the terms of the Consent Decree, the District Council knowingly sought to create an environment in which its officers, the officers of its Local Unions and JOHN DOES 1-50 could manipulate job referrals to employers by fraudulently altering the open employment lists, thereby allowing JOHN DOES 1-50 to receive preferential treatment and selection priority throughout the term limits of the July 1, 2001 CBA. With restricted access to the District Council's members, On Par was not given a fair and equal opportunity to staff its projects with qualified and skilled members of the District Council and its Local Unions.

27.     Further, after the execution of the July 1, 2001 CBA, the District Council knowingly permitted an unlawful and corrupt scheme of intimidation and interference on the construction projects that On Par was contracted to perform in furtherance of the unfair business advantages being given to JOHN DOES 1-50. A planned pattern of intimidation was implemented with the direct knowledge of the District Council in which business agents of the District Council continuously appeared on On Par's project sites with the very purpose of disrupting On Par's work and its productivity; thereby, causing substantial damages to On Par's finances and reputation.

28.     The U.S. Department of Justice is presently challenging the revisions to the 50/50 Rule contained within the July 1, 2001 CBA as a violation of the pre-existing

11

Consent Decree, a Decree that was designed to democratize the District Council's operations, and to eliminate corruption and manipulation of the carpentry work force in New York City. *See e.g.* cases cited ante at ¶ 2.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST THE DISTRICT COUNCIL

29.     The Plaintiff On Par repeats, re-alleges, and reiterates each and every allegation set forth within Paragraphs 1 through 28 above as though fully set forth herein.

30.     Prior to executing the July 1, 2001 CBA, the District Council was aware that numerous amounts of its officers and the officers of its local unions had been convicted for labor racketeering due to actions that included providing preferential treatment to certain employers in exchange for monetary compensation.

31.     As a direct result of the pre-existing conspiracy amongst its officers to manipulate referrals of its members for the sole purpose of economic benefit by its officers, the District Council was sued by the United States of America in the Government Action.

32.     After numerous years of litigation in the Government Action, the District Council entered into the Consent Decree to ensure fair and equal procedures for the referral of its members to jobs requested by employers. As part of the Consent Decree, the District Council's own By-Laws were amended to include the job referral procedures contained with the Consent Decree.

12

33.     Thereafter, the District Council knowingly entered into the July 1, 2001 CBA without concealing the terms of the Consent Decree in an attempt to undermine the safeguards of the job referral system contained within the Consent Decree.

34.     Since the Consent Decree by its very terms was made part of the District Council's By Laws, by entering into the July 1, 2001, the District Council exceeded its own authority to bind its members, by ignoring the specific job referral system contained within its own By Laws. Thus, the District Council fraudulently executed the July 1, 2001 CBA without any actual authority rendering the July 1, 2001 CBA void.

35.     Following the execution of the July 1, 2001 CBA, the District Council knowingly permitted its officers, the officers of its Local Unions, and JOHN DOES 1-50 to continue to utilize a corrupt scheme to provide preferential treatment to JOHN DOES 1-50, in return for economic benefits.

36.     As a direct result of this corrupt scheme by its officers, which the District Council knowingly permitted and assisted, On Par was provided with substandard and unqualified labor. Despite a complete failure by the District Council and its Local Unions to provide a fair and equal opportunity to On Par to obtain qualified labor, the District Council still attempted to intimidate On Par through unlawful means to force compliance with the unfair and unjust provisions of the July 1, 2001 CBA. As a direct result of these actions by the District Council, On Par suffered damages to be proven at trial, but believed to be in excess of $100,000,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST THE DISTRICT COUNCIL

13

37.    The Plaintiff On Par repeats, re-alleges, and reiterates each and every allegation set forth within Paragraphs 1 through 36 above as though fully set forth herein.

38.    Prior to executing the July 1, 2001 CBA, the District Council was aware of a corrupt scheme by its officers and the officers of its Local Union to utilize their position within the District Council to gain economic benefits in return for providing individual members of the District Council and certain employers with preferential treatment thereby resulting in unfair labor practices.

39.    As a direct result of this corrupt scheme, numerous officers of the District Council and its Local Unions were convicted of labor racketeering.

40.    Despite the knowledge of a pre-existing corrupt scheme throughout its officers and the officers of the Local Union, the District Council knowingly entered into the July 1, 2001 CBA in an attempt to undermine the safeguards for job referrals contained within the Consent Decree.

41.    In entering the July 1, 2001 CBA, the District Council knowingly misrepresented that all signatory employers to the July 1, 2001 CBA would be provided an open employment list to ensure that every employer would have an equal and fair opportunity to qualified and skilled labor. Nevertheless, the District Council's intention in removing the safeguards for an open and fair job referral system contained within the Consent Decree from the July 1, 2001 CBA was to create an environment in which its officers, the Local Union officers, and JOHN DOES 1-50 could continue a corrupt scheme to manipulate the Union's job referrals in exchange for illegal economic benefits and unfair competitive advantages.

14

42.    By removing the safeguards for a fair and equal job referral system contained within the Consent Decree from the July 1, 2001 CBA, the District Council fraudulently induced On Par to become a signatory to the July 1, 2001 CBA by knowingly misrepresenting that On Par would be given an equal and fair opportunity to qualified labor.

43.    Based on this misrepresentation by the District Council, On Par was forced to conduct its business with substandard and unqualified labor resulting in damages to be proven at the time of trial but now believed to be in excess of $100,000,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST THE DISTRICT COUNCIL AND JOHN DOES 1-50

44.    The Plaintiff On Par repeats, re-alleges, and reiterates each and every allegation set forth within Paragraphs 1 through 43 above as though fully set forth herein.

45.    Prior to executing the July 1, 2001 CBA, the District Council was aware of a corrupt scheme by its officers and the officers of its Local Union to utilize their position within the District Council to gain economic benefits in return for providing individual members of the District Council and outside employers with preferential treatment thereby resulting in unfair labor practices.

46.    As a direct result of this corrupt scheme, numerous officers of the District Council and its Local Unions have been convicted of labor racketeering.

47.    Despite the knowledge of a pre-existing corrupt scheme throughout its officers and the officers of the Local Union, the District Council knowingly entered into

15

the July 1, 2001 CBA in an attempt to undermine the safeguards for job referrals contained within the Consent Decree.

48.    By willingly utilizing the July 1, 2001 CBA to undermine the safeguards contained within the Consent Decree, the District Council knowingly participated in a conspiracy between the District Council, its Local Unions, and JOHN DOES 1-50 to provide an unfair and unlawful advantage to JOHN DOES 1-50 in direct violation of Section 1 of the Sherman Anti Trust Act.

49.    Following the execution of the July 1, 2001 CBA, the District knowingly permitted its business agents to unlawfully disrupt On Par's projects in furtherance of the conspiracy between the District Council, its Local Unions, and JOHN DOES 1-50. Due to these very violations by the District Council, On Par was not given a fair and equal opportunity to compete within its business in the New York Area resulting in damages to be proven at trial but believed to be in excess of $100,000,000.00.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST THE DISTRICT COUNCIL AND JOHN DOES 1-50

50.    The Plaintiff On Par repeats, re-alleges, and reiterates each and every allegation set forth within Paragraphs 1 through 49 above as though fully set forth herein.

51.    Prior to executing the July 1, 2001 CBA, the District Council was aware of a corrupt scheme by its officers and the officers of its Local Union to utilize their position within the District Council to gain economic benefits in return for providing

16

individual members of the District Council and outside employers with preferential treatment thereby resulting in unfair labor practices.

52.    As a direct result of this corrupt scheme, numerous officers of the District Council and its Local Unions have been convicted of labor racketeering.

53.    Despite the knowledge of a pre-existing corrupt scheme throughout its officers and the officers of the Local Union, the District Council knowingly entered into the July 1, 2001 CBA in an attempt to undermine the safeguards for job referrals contained within the Consent Decree.

54.    By willingly utilizing the July 1, 2001 CBA to undermine the safeguards contained within the Consent Decree, the District Council knowingly participated in a conspiracy between the District Council, its Local Unions, and JOHN DOES 1-50 to provide an unfair and unlawful advantage to JOHN DOES 1-50 in direct violation of the *New York State Donnelly Act, N.Y. Gen. Bus. Law § 340.*

55.    Following the execution of the July 1, 2001 CBA, the District knowingly permitted its business agents to unlawfully disrupt On Par's projects in furtherance of the conspiracy between the District Council, its Local Unions, and JOHN DOES 1-50. Due to these very violations by the District Council, On Par was not given a fair and equal opportunity to compete within its business in the New York Area resulting in damages to be proven at trial but believed to be in excess of $100,000,000.00.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST THE DISTRICT COUNCIL

56.    The Plaintiff On Par repeats, re-alleges, and reiterates each and every allegation set forth within Paragraphs 1 through 55 above as though fully set forth herein.

57.    By entering the July 1, 2001 CBA, the District Council expressly agreed to provide On Par with sufficient forces of skilled labor, to avoid unnecessary waste and delays, to keep costs of work as low as possible, and to bring about stable conditions within On Par's business. Nevertheless, by willingly removing from the July 1, 2001 CBA the safeguards for job referrals contained within the Consent Decree, the District Council breached each of the above referenced covenants.

58.    By removing from the July 1, 2001 CBA the procedural safeguards for job referrals contained within the Consent Decree, the District Council willing participated in a corrupt scheme to benefit its officers, the Local Union officers and JOHN DOES 1-50.

59.    Following the execution of the July 1, 2001, the District Council knowingly failed to ensure that its members participated in an open, fair and equal job referral system in violation of the July 1, 2001 CBA. As a result, On Par received labor from the District Council that was substandard, unskilled, and unqualified to perform the tasks necessary to ensure construction projects were completed in a timely fashion with minimal waste and delays.

60.    Without qualified and skilled labor at its disposal, On Par suffered extensive damages to be proven at the time of trial, but believed to be in excess of $100,000,000.00.

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST THE DISTRICT COUNCIL AND JOHN DOES 1-50

61.    The Plaintiff On Par repeats, re-alleges, and reiterates each and every allegation set forth within Paragraphs 1 through 60 above as though fully set forth herein.

62.    Prior to executing the July 1, 2001 CBA, the District Council was aware of a corrupt scheme by its officers and the officers of its Local Union to utilize their position within the District Council to gain economic benefits in return for provide individual members of the District Council and outside employers with preferential treatment thereby resulting in unfair labor practices.

63.    As a direct result of this corrupt scheme, numerous officers of the District Council and its Local Unions have been convicted of labor racketeering. In a direct attempt to stop this corrupt scheme the United States of America initiated the Government Action. Through the United States of America's efforts in the Government Action, the Consent Decree was entered in 1994, which provided specific procedural safeguards to ensure an open, fair and equal job referral system that is free from unlawful interference.

64.    Thereafter, the District Council willfully undermined the procedural safeguards for an open, fair and equal job referral system without unlawful interference by entering into the July 1, 2001 CBA without concealing the existence of the Consent Decree or including language consistent with the procedural safeguards for job referrals contained within the Consent Decree.

65.    Following the execution of the July 1, 2001 CBA, the District Council knowingly permitted and assisted in a corrupt scheme to manipulate the job referrals of

19

(v)     On its Fifth Cause of Action for damages to be proven at the time of trial
        but believed to be in excess of $100,000,000.00;

(vi)    On its Sixth Cause of Action for damages to be proven at the time of trial
        but believed to be in excess of $100,000,000.00;

(vii)   And for such other and further relief as the Court deems just and fair under
        the circumstances including, but not limited to, attorneys fees, costs and
        disbursements;

Dated: New York, New York
       April 2, 2008

                                        By:

                                        Michael McDermott
                                        GEORGOULIS & ASSOCIATES, PLLC
                                        Attorneys for the Plaintiff
                                        45 Broadway, 14th Floor
                                        New York, New York 10006
                                        (212) 425-7854

21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ON PAR CONTRACTING CORP,

                      Plaintiffs,                           08 CV 3329 (LAP)

      -against-

THE DISTRICT COUNCIL OF NEW YORK CITY        **ANSWER**
AND VICINITY OF THE UNITED BROTHERHOOD
OF CARPENTERS AND JOINERS OF AMERICA and
JOHN DOES 1-50, unknown business entities that were
Signatories to the July 1, 2001 CBA,

                      Defendants.
-----------------------------------------------------------------------X

       Defendant, District Council of New York City and Vicinity of the United Brotherhood of

Carpenters and Joiners of America ("District Council"), by its attorneys, O'Dwyer & Bernstien,

LLP, as and for its answers to the complaint herein, alleges as follows:

       1.      Denies the allegations contained in paragraph "1" of the complaint except admits the

first sentence thereof.

       2.      Denies the allegations contained in paragraph "2" of the complaint except admits the

District Council has been involved in litigation initiated by the United States.

       3.      Denies the allegations contained in paragraph "3" of the complaint except admits the

Court has jurisdiction under the LMRA.

       4.      Admits the allegations contained in paragraph "4" of the complaint; but denies

knowledge or information sufficient to form a belief as to where Plaintiff's principal place of

business is located.

5.    Admits the allegations contained in paragraph "5" of the complaint except denies it oversees more than 20 constituent unions and denies the allegation that the District Council is engaged in an activity that affects commerce within the meaning of the Sherman Anti-Trust Act.

6.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph "6" of the complaint.

7.    Denies with respect to paragraph "7" that Plaintiff is entitled to trial by jury on all causes of action.

8.    Admits the allegations contained in paragraph "8" of the complaint except denies the District Council has supervisory powers over all matters relating to its Local Unions.

9.    Denies the allegations contained in paragraph "9" of the complaint.

10.    Denies the allegations contained in paragraph "10" of the complaint.

11.    Denies the allegations contained in paragraph "11" of the complaint except admits the first sentence thereof.

12.    Admits the allegations contained in paragraph "12" of the complaint.

13.    Denies the allegations contained in paragraph "13" of the complaint. Defendant respectfully refers this Court to the Consent Decree for its terms.

14.    Denies the allegations contained in paragraph "14" except admits the Consent Decree addressed job referral procedures.

15.    Admits the allegations contained in paragraph "15" of the complaint except denies referrals are based solely on length of time on the Out of Work List.

16.    Admits the allegations contained in paragraph "16" of the complaint.

17.    Denies the allegations contained in paragraph "17" of the complaint.

18.    Denies the allegations contained in paragraph "18" of the complaint.

19.    Denies the allegations contained in paragraph "19" of the complaint.

20.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "20" of the complaint except admits the District Council has negotiated CBAs including the July 1, 2001 CBA to which On Par was bound.

21.    Denies the allegations contained in paragraph "21" of the complaint.

22.    Denies the allegations contained in paragraph "22" of the complaint.

23.    Denies the allegations contained in paragraph "23" of the complaint.

24.    Denies the allegations contained in paragraph "24" of the complaint.

25.    Denies the allegations contained in paragraph "25" of the complaint except denies knowledge or information sufficient to form a belief as to the truth of Plaintiff's state of mind asserted in the second sentence thereof.

26.    Denies the allegations contained in paragraph "26" of the complaint.

27.    Denies the allegations contained in paragraph "27" of the complaint.

28.    Admits the allegations contained in paragraph "28" of the complaint.

29.    Defendant repeats and re-alleges each and every answer to paragraphs 1-28 as if set forth herein.

30.    Denies the allegations contained in paragraph "30" of the complaint.

31.    Denies the allegations contained in paragraph "31" of the complaint.

32.    Denies the allegations contained in paragraph "32" of the complaint except admits the District Councils by-laws were amended pursuant to the Consent Decree.

33.    Denies the allegations contained in paragraph "33" of the complaint.

34.    Denies the allegations contained in paragraph "34" of the complaint.

35.    Denies the allegations contained in paragraph "35" of the complaint.

3

36.    Denies the allegations contained in paragraph "36" of the complaint.

37.    Defendant repeats and re-alleges each and every answer to paragraphs 1-36 as if set forth herein.

38.    Denies the allegations contained in paragraph "38" of the complaint.

39.    Denies the allegations contained in paragraph "39" of the complaint.

40.    Denies the allegations contained in paragraph "40" of the complaint.

41.    Denies the allegations contained in paragraph "41" of the complaint.

42.    Denies the allegations contained in paragraph "42" of the complaint.

43.    Denies the allegations contained in paragraph "43" of the complaint.

44.    Defendant repeats and re-alleges each and every answer to paragraphs 1-43 as if set forth herein.

45.    Denies the allegations contained in paragraph "45" of the complaint.

46.    Denies the allegations contained in paragraph "46" of the complaint.

47.    Denies the allegations contained in paragraph "47" of the complaint.

48.    Denies the allegations contained in paragraph "48" of the complaint.

49.    Denies the allegations contained in paragraph "49" of the complaint.

50.    Defendant repeats and re-alleges each and every answer to paragraphs 1-49 as if set forth herein.

51.    Denies the allegations contained in paragraph "51" of the complaint.

52.    Denies the allegations contained in paragraph "52" of the complaint.

53.    Denies the allegations contained in paragraph "53" of the complaint.

54.    Denies the allegations contained in paragraph "54" of the complaint.

55.    Denies the allegations contained in paragraph "55" of the complaint.

56.    Defendant repeats and re-alleges each and every answer to paragraphs 1-55 as if set forth herein.

57.    Denies the allegations contained in paragraph "57" of the complaint.

58.    Denies the allegations contained in paragraph "58" of the complaint.

59.    Denies the allegations contained in paragraph "59" of the complaint.

60.    Denies the allegations contained in paragraph "60" of the complaint.

61.    Defendant repeats and re-alleges each and every answer to paragraphs 1-60 as if set forth herein.

62.    Denies the allegations contained in paragraph "62" of the complaint.

63.    Denies the allegations contained in paragraph "63" of the complaint.

64.    Denies the allegations contained in paragraph "64" of the complaint.

65.    Denies the allegations contained in paragraph "65" of the complaint.

66.    Denies the allegations contained in paragraph "66" of the complaint.

67.    Denies the allegations contained in paragraph "67" of the complaint.

## AFFIRMATIVE DEFENSES

1.    The complaint fails to state a cause of action against the District Council.

2.    Plaintiff's claims are barred by the doctrines of res judicata and/or collateral estoppel.

3.    Plaintiff's claims are subject to grievance and arbitration provisions of its Collective Bargaining Agreements with the District Council.

4.    Plaintiff's claims are barred by the applicable statute of limitations.

5.    Plaintiff's claims are barred by the doctrine of unclean hands.

WHEREFORE, defendant District Council demands judgment dismissing the complaint,

awarding attorneys' fees and costs, and awarding it such other and further relief as may be just in

the premises.

Dated: New York, New York
May 6, 2008

<div style="margin-left:40%">

Yours, etc.,

O'DWYER & BERNSTIEN, LLP

By: _____

Gary Rothman (GR 2785)
Attorneys for Defendant
District Council
52 Duane Street
New York, New York 10007
(T) (212) 571-7100
(F) (212) 571-7124

</div>

TO:    Michael McDermott, Esq.
       Georgoulis & Associates, PLLC
       Attorneys for Plaintiff
       45 Broadway, 14th Floor
       New York, NY 10006


district council\on par v dc\answer

6